UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:25-bk-01659-LVV

In re:

THE ACCOUNTING LAB GROUP, LLC
d/b/a THE ACCOUNTING LAB, a
Florida Limited Liability Company,

CHAPTER 11

Debtor,
_______________________________________/

THE ACCOUNTING LAB GROUP LLC
d/b/a THE ACCOUNTING LAB, a
Florida Limited Liability Company,

Plaintiff,

v.

Adv. Pro. No.: 6:25-ap-00049-LVV

MARK SKAGGS, an individual,
STRATEGIC ACCOUNTING
AND BUSINESS SOLUTIONS, LLC,
a Kentucky Limited Liability Company,

Defendants.
_______________________________________/

**DEBTOR'S CORRECTED[1] MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH MARK SKAGGS AND STRATEGIC ACCOUNTING AND BUSINESS SOLUTIONS, LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

[1] This corrected motion supersedes the previously filed motion solely to revise the notice provisions and reflect the 21-day negative notice procedure permitted by Local Rule 2002-4. No substantive revisions have been made to the Motion or the relief requested therein.

If you object to the relief requested in this paper you must file a response with the Clerk of Court at Orlando Federal Court, 400 West Washington Street, Suite 5100, Orlando, FL 32801 within **21 days** from the date of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

The Accounting Lab Group LLC d/b/a The Accounting Lab (the "Debtor" or "TALG"), by and through its undersigned counsel, and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Rules 2002-4 and 9013-1 (collectively the "Bankruptcy Rules"), hereby submits this motion (the "Motion") and requests approval of the Settlement Agreement attached hereto as **Exhibit "A"** (the "Settlement Agreement"), by and between TALG and Mark Skaggs ("Skaggs"), an individual, and Strategic Accounting and Business Solutions, LLC ("SAB") and, together with Skaggs, the "Defendants", and collectively with TALG, the "Parties"). In support of this Motion, the Debtor states as follows:

## BACKGROUND

1. On March 25, 2025 (the "Petition Date"), TALG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

2. TALG specializes in providing accounting, financial planning, and management services to various businesses including physicians, veterinarians, and dental practices.

3. Skaggs was a former Business Advisor/employee of TALG who resigned on October 4, 2024 and formed SAB.

4. On or about April 2025, TALG commenced the above-captioned Adversary Proceeding against Skaggs and SAB, seeking to recover estate property, enforce restrictive covenants, and obtain damages for misappropriation of trade secrets, breach of contract, and tortious interference with business relationships. Specifically, the Adversary Proceeding involves claims for: (i) turnover of estate property under 11 U.S.C. § 542(a); (ii) misappropriation of trade secrets under the Florida Uniform Trade Secrets Act; (iii) breach of employment agreement and restrictive covenants; and (iv) tortious interference with business relationships.

5. After informal exchange of information and analysis of the merits of the respective claims and defenses, and to avoid the costs and uncertainties of litigation, the Parties engaged in settlement discussions, attended mediation, and ultimately as a result of good-faith, arms-length negotiations, the Parties reached a compromise and executed the Settlement Agreement, attached hereto as Exhibit "**A**."

## SETTLEMENT TERMS

6. The Settlement Agreement will avoid substantial litigation costs and aid in furthering the administration of TALG's estate and conclusion of its Chapter 11 reorganization effort. The Settlement Agreement will prevent the need to adjudicate all outstanding issues through to final judgment.

7. For convenience, a summary of the Parties' resolution concerning the disputed claims is set forth below. For a complete review of the settlement terms negotiated between the Parties, reference should be made to Exhibit "**A**" for the actual terms of the proposed settlement.

*Note: If any discrepancy exists between this summary and the Settlement Agreement, the terms in the Settlement Agreement, attached hereto as Exhibit "A," shall control.*

8. The pertinent provisions of the Settlement Agreement proposed in this Motion include:

a. Monetary Payment. Defendants shall pay TALG the sum of Fifty Thousand Dollars ($50,000.00), payable in three equal monthly installments ($16,666.67, $16,666.67, and $16,666.66) over ninety (90) days following the Effective Date of the Settlement Agreement.

b. Release of Claims. The Plaintiff Parties (TALG, Corico McCray Sr., Robert Craig, and Chestnut Financial Group, LLC) shall release all claims against the Defendant Parties (Mark Skaggs, Jennifer Skaggs, and SAB) and the Released Parties, including termination of the Employment Agreement. The release expressly carves out and preserves all claims against Bill King.

c. Restrictive Covenants (12 months). Skaggs and SAB shall not work with or provide services to Daniel Sullivan, Bill King, PJA Advisors / ABA for Small Business, or Chris Kelly for a period of twelve (12) months.

d. Client Non-Solicitation (12 months). Skaggs and SAB shall not solicit any current TALG client that Skaggs personally serviced during his employment for a period of twelve (12) months; provided that this non-solicitation does not apply to any clients that are currently clients of both TALG and SAB.

e. Do Not Touch List (12 months). TALG shall provide a list of twenty (20) current clients that Skaggs and SAB are precluded from servicing for twelve (12) months, with Defendants' right to contest inclusion of any client on such list. Clients that are currently SAB clients shall not be included on the Do Not Touch List.

f. Employee Non-Solicitation (12 months). Defendants shall not solicit any current TALG employees for a period of twelve (12) months.

g. Document Production. Skaggs and SAB shall produce all non-privileged communications with Bill King from June 1, 2023 to the present within seven (7) days of the Effective Date, with certification of completeness and a privilege log for any withheld documents.

h. Dismissal. Upon the Effective Date, the Parties shall jointly file a stipulation of dismissal with prejudice of the Adversary Proceeding.

i. Bankruptcy Court Approval. The Settlement Agreement is contingent upon approval of this Court and shall not become final until entry of an order approving the same.

## BASIS FOR RELIEF REQUESTED

9. Through this Motion, the Debtor requests entry of an Order approving the Settlement Agreement to permit the amicable resolution of claims between the Parties. As a matter of policy, compromises and settlements are favored in order to minimize litigation and expedite the administration of the bankruptcy estate. *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996).

10. The Eleventh Circuit Court of Appeals has set forth factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005). These factors are as follows: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) paramount interests of creditors and proper deference to their reasonable views. *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990).

11. It is not necessary for a bankruptcy court to explicitly consider all four *Justice Oaks* factors when approving a proposed settlement. *Chira v. Saal, et al. (In re Chira)*, 567 F.3d 1307, 1313 (11th Cir. 2009) (affirming bankruptcy court's approval of settlement agreement where bankruptcy court explicitly evaluated only two of the four Justice Oaks Factors.) Also, a bankruptcy court is not obligated to actually rule on the merits of the various claims or conduct a "mini trial" on the merits of the underlying action. *In re Van Diepen, P.A.*, 236 F. Appx. 498, 503 (11th Cir. 2007). Rather, settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Jiangbo Pharmaceuticals, Inc.*, 520 B.R. 316, 321 (Bankr. S.D. Fla. 2014).

12. The Parties submit that the Settlement Agreement overwhelmingly satisfies the *Justice Oaks* factors. The Settlement Agreement is the product of extensive settlement discussions and negotiations between the Parties. The Parties submit that the Settlement Agreement is the direct result of the exercise of their business judgment and is in the best interests of the estate when considering the uncertainties, significant expense, and potential delay involved in resolving the various claims between them. As such, the Parties believe that the compromise set forth in the Settlement Agreement is reasonable and falls well above the lowest point on the range of reasonableness as required by Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and applicable case law. The Parties' analysis of the applicable *Justice Oaks* factors is set forth in further detail below.

13. ***The Probability of Success in the Litigation***. The first *Justice Oaks* factor reflects the Supreme Court's view that a court should form an "intelligent and objective opinion" of the probability of success in the underlying litigation and inherent costs in such litigation. *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

In fact, some courts have identified this factor as most important in determining the reasonableness of a settlement under Bankruptcy Rule 9019(a). *In re Adelphia*, 327 B.R. 143, 160 (Bankr. S.D.N.Y. 2005) ("This factor . . . is in my view the most important factor, and I weigh it accordingly.").

14. The claims in this Adversary Proceeding involve complex factual and legal issues, including whether the restrictive covenants are enforceable under Florida law and whether trade secrets were actually misappropriated. Defendants have raised numerous defenses including lack of privity, waiver, abandonment of the Employment Agreement, and that the alleged trade secrets constitute public knowledge. The varying possibilities considered by the Parties lend little certainty to the Parties' relative probability of success. The Settlement Agreement, on the other hand, achieves a prompt resolution to the various claims between the Parties without any further expense, delay, or risk of loss. Thus, given the uncertainty surrounding continued litigation between them, the Parties submit that approval of the Settlement Agreement is clearly supported by the first *Justice Oaks* factor.

15. ***Difficulties in Collection***. Defendants are located in Kentucky. Even if TALG prevailed at trial, collection from out-of-state individual defendants and a potentially undercapitalized LLC could prove difficult and expensive, requiring domestication of any judgment in Kentucky courts and further enforcement proceedings. The Settlement Agreement avoids those risks entirely and provides for structured payments totaling $50,000 over ninety (90) days. As a result, the Parties believe the Settlement Agreement provides a superior alternative to continued litigation and potential collection difficulties.

16. ***The Complexity of Litigation***. In evaluating the reasonableness of a settlement, a court should form an educated estimate of the complexity, expense, and likely duration of such

litigation. *TMT Trailer*, 390 U.S. at 424. The claims between the Parties involve multiple causes of action, extensive discovery regarding over 1,000 former clients, trade secret identification issues, and would require expert testimony. Both sides would incur substantial costs. The Settlement Agreement fully resolves each of the claims between the Parties and avoids these costs, bringing immediate benefit to the estate. Consequently, this factor clearly weighs in favor of approving the Settlement Agreement.

17. ***The Interests of the Creditors***. The Settlement Agreement provides immediate cash flow ($50,000 over 90 days), protects the estate's client relationships through restrictive covenants and the Do Not Touch List, secures valuable document production regarding Bill King, and avoids draining estate resources on protracted litigation. This allows TALG to focus on reorganization for the benefit of its estate and creditors. Absent approval of the Settlement Agreement, the Debtor would face significant administrative costs pursuing recovery with uncertain benefit to creditors.

18. For all the foregoing reasons, the Parties believe that good cause exists for approval of the Settlement Agreement. The Settlement Agreement not only surpasses the minimum threshold of reasonableness necessary to warrant approval, but it represents a fair and reasonable resolution in the best interests of the estate.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) granting this Motion; (ii) approving the proposed settlement and authorizing the Parties to consummate the settlement pursuant to the terms of the Settlement Agreement; (iii) granting such other and further relief as the Court deems just and proper.

Jointly and Respectfully submitted August 7, 2026.

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 768-1600
*Counsel for Debtor, The Accounting Lab Group, LLC*

*s/ Jason B. Bloom*
Jason B. Bloom
Florida Bar No.: 89772
jbloom@bakerdonelson.com
Royce B. Badger Jr.
Florida Bar No.: 115394
rbadger@bakerdonelson.com

**SPENCER FANE LLP**
201 North Franklin Street, Suite 2150
Tampa, FL 33602
Telephone: (813) 424-3514

*s/ Patrick M. Mosley*
Patrick M. Mosley
Florida Bar No. 33735
pmosley@spencerfane.com
*Counsel for Defendants*

**HILL WARD HENDERSON**
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602

*s/ S. Gordon Hill*
S. Gordon Hill
Florida Bar No.: 94374
ghill@hwhlaw.com
*Counsel for Defendants*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:25-bk-01659-LVV

In re:

THE ACCOUNTING LAB GROUP, LLC
d/b/a THE ACCOUNTING LAB, a
Florida Limited Liability Company,

CHAPTER 11

Debtor,
_____________________________________________/

THE ACCOUNTING LAB GROUP LLC
d/b/a THE ACCOUNTING LAB, a
Florida Limited Liability Company,

Plaintiff,

v.

Adv. Pro. No.: 6:25-ap-00049-LVV

MARK SKAGGS, an individual,
STRATEGIC ACCOUNTING
AND BUSINESS SOLUTIONS, LLC,
a Kentucky Limited Liability Company,

Defendants.
_____________________________________________/

**ORDER GRANTING MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT**

**THIS MATTER** having come before the Court upon the Debtor's Motion for Approval of Compromise and Settlement with Mark Skaggs and Strategic Accounting and Business Solutions, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Motion"); and the Court having reviewed the Motion and the Settlement Agreement attached thereto as Exhibit "**A**"; and the Court having considered the *Justice Oaks* factors; and the Court finding that the settlement is fair, equitable, and in the best interests of the estate; and good cause appearing, it is hereby:

**ORDERED** that the Motion is GRANTED; and it is further

**ORDERED** that the Settlement Agreement, attached as Exhibit "**A**" to the Motion, is hereby approved in its entirety, and the Parties are authorized to consummate the settlement pursuant to its terms.

**EXHIBIT "A"**

[Settlement Agreement]